## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRIST THE KING MANOR, INC., :
et al.,                          :       1:14-cv-1809
                                 :
                  Plaintiffs,    :        Hon. John E. Jones III
                                 :
        v.                       :
                                 :
SYLVIA M. BURWELL, et al.,       :
                                 :
                  Defendants.    :

## MEMORANDUM

## February 18, 2016

Presently pending before the Court are cross motions for summary judgment filed by the parties in the above-captioned matter. (Docs. 29, 31). For the reasons that follow, the Court shall grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment.

## I.      PROCEDURAL HISTORY

Plaintiffs bring this action pursuant to the Administrative Procedure Act, ("APA"), 5 U.S.C. § 702, to set aside action taken by Defendants and to preclude Defendants from further action to retroactively approve Pennsylvania's State Plan Amendment 08-007, (hereafter "SPA 08-007" or "the SPA"), an amendment to Pennsylvania's state plan for administering its Medicaid

program for the 2008-2009 fiscal year. (Doc. 17). Plaintiffs have previously

challenged  Defendants' initial approval of SPA 08-007 in this Court, ultimately

culminating in review by the Third Circuit in *Christ the King Manor, Inc. v. Sec'y*

*U.S. Dep't of Health and Human Servs.*, 730 F.3d 291 (3d Cir. 2013), (hereafter

"*Christ the King I*"), to be elaborated upon below.

Plaintiffs, a subset of the plaintiffs in *Christ the King I*, filed the instant

action on September 16, 2014, seeking declaratory and injunctive relief. (Doc. 1).

An amended complaint was filed on December 16, 2014, after the Secretary issued

her reapproval of the SPA based on the supplemented record. (Doc. 17).

Defendants filed an answer to the amended complaint on January 23, 2015.

(Doc. 18). On February 6, 2015, Defendants filed the administrative record in the

instant matter. (Doc. 19, Ex. 1).

The parties filed cross motions for summary judgment on April 15, 2015.

(Docs. 29, 31). Both motions have been fully briefed, (Docs. 30, 32, 34, 36, 37,

38), and are ripe for our review.

## II.    BACKGROUND

There are no disputed issues of material fact. The parties have agreed that

this is an APA case which may be resolved upon the Court's review of the

administrative record. (Docs. 26, 27). Given that the parties are very familiar with

the underlying factual background of this litigation, our summary of the facts will

be concise and will principally focus on the facts relevant to the resolution of the pending motions. As part of our discussion of the facts, we will also review the federal statutes relevant to our decision.

### A.   Factual and Statutory Background

Plaintiffs are nonpublic nursing facility providers participating in Pennsylvania's Medicaid Program. (Doc. 17, ¶¶ 3-4). Defendant Sylvia Mathews Burwell is the Secretary of the U.S. Department of Health and Human Services, (hereafter "the Secretary" or "HHS"); in that capacity, pursuant to the Medicaid Act, she is charged with the review and approval of Pennsylvania's State Plan for Medical Assistance. (*Id.*, ¶ 5). The Secretary also supervises Pennsylvania's compliance with its State Plan, including delegation of such authority to the Centers for Medicare and Medicaid Services (hereafter "CMS"). (*Id.*). Defendant Marilyn Tavenner is the Administrator of CMS. (*Id.*, ¶ 6). Defendant Francis McCullough is the Associate Regional Director for Region III/Division of Medicaid and Children's Health Operations of CMS. (*Id.*, ¶ 7).

Medicaid, created under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* ("Medicaid Act"), is a "cooperative federal-state program that provides medical care to needy individuals." *Douglas v. Indep. Living Ctr. of S. Cal.*, -- U.S. --, 132 S.Ct. 1204, 1208 (2012). As a requirement of the program, Pennsylvania must submit a State Plan for Medical Assistance (the "State Plan") to

CMS for approval. "In order to qualify for federal funding . . . a state plan must comply with the requirements of the Medicaid Act." *Christ the King I*, 730 F.3d at 297 (citing 42 U.S.C. § 1396a).

One of the principle requirements of the Medicaid Act for a state plan is known as the "equal access provision" of Section 30(A). 42 U.S.C. § 1396a(a)(30)(A); *see Christ the King I*, 730 F.3d at 297 (explaining that Section 30(A) is generally known as the equal access provision). Section 30(A) requires that a state plan provide "methods and procedures . . . to assure that payments are consistent with efficiency, economy, and quality of care" and are sufficient to ensure that Medicaid beneficiaries have adequate access to providers.

Pennsylvania has designated its Department of Human Services[1], ("DHS"), as the state agency to create and administer its State Plan. *See* 42 U.S.C. § 1396a(a)(5).  As discussed extensively in the prior litigation, Pennsylvania pays participating nursing facilities for Medicaid-related services through the use of what it refers to as the "case-mix rate."  DHS "calculates the 'case-mix rate' using a complex formula that produces an individualized per diem reimbursement rate for each facility" based on various factors. *Christ the King I*, 730 F.3d at 298 (citing 55 Pa.Code § 1187.96). This case mix rate is effective for one fiscal year, from July 1 through the following June 30.

---

[1] This agency was formerly known as the Department of Public Welfare.

4

In an effort to keep rising costs down, Pennsylvania introduced a new variable to calculating reimbursement rates, called the budget adjustment factor, ("BAF"). In this context, a BAF is a "fraction by which each provider's case-mix payment rate is multiplied, thereby reducing the reimbursement rate by a certain percentage." *Christ the King I*, 730 F.3d at 298. Originally designed to be a temporary solution to managing rising costs, Pennsylvania ended up using a BAF every year since the 2005-2006 fiscal year. *Id.* at 299.

The instant litigation concerns the BAF that was designated as SPA 08-007, which applied to provider reimbursement rates for the state's 2008-2009 fiscal year.[2] Specifically, this BAF was 0.90891. In effect, this BAF reduced each nursing facility's proposed per diem rate by 9.109%. *Id.* at 301. However, even after application of this BAF, provider payments would still be one percent higher on average in fiscal year 2008-09 than they had been in the previous fiscal year, "due to the continuing increase in per diem rates under the case-mix methodology." *Id.*

### B.    Prior Court Proceedings Concerning SPA 08-007

As aforementioned, Plaintiffs previously challenged the Secretary's approval of SPA 08-007 in this Court, claiming that the SPA violated the Medicaid Act. Plaintiffs argued that the SPA adjusted Pennsylvania's method for determining

---

[2] Again, for greater detail on the BAF and its approval process, please refer to *Christ the King I*.

Medicaid reimbursement rates to private nursing facility providers without considering quality of care, in violation of 42 U.S.C. § 1396a(a)(30)(A), ("Section 30(A)"). This challenge ultimately culminated in review by the Third Circuit in *Christ the King I*. The Third Circuit affirmed in part and reversed in part this Court's decision. Relevant to the instant matter, the Third Circuit reversed our grant of summary judgment to the Federal Defendants. *Christ the King I*, 730 F.3d at 321. The panel found that the administrative record before the Secretary lacked sufficient evidence that Pennsylvania had considered the impact of SPA 08-007 on quality of care or adequate access, which was a required consideration by the Secretary under Section 30(A); consequently, the panel held that it could not "discern from the record a reasoned basis for the agency's decision," and thus the Secretary's approval of SPA 08-007 was arbitrary and capricious under the APA. *Id.* at 314.[3] The panel further stated that in so holding,

> [it does] not imply that the payments Pennsylvania made to providers during the 2008-09 fiscal year were in fact inconsistent with any of Section 30(A)'s requirements. It is possible that the state was able to adjust the per diem rates by nine percent while maintaining quality care and ensuring adequate access to providers. But it is also possible that the state's nine percent adjustment threatened to harm care to Medicaid recipients in ways that previous, small adjustments had not. The problem here is that, at least so far as the record shows, HHS did not actually determine which scenario it confronted, and thus we are obligated to set its approval decision aside.

_____

[3] We will review the Third Circuit's opinion and mandate in *Christ the King I* more comprehensively in the Discussion section of our Memorandum.

*Id.* After this comment, the Third Circuit included a footnote, the substance of which has ultimately led to this round of litigation pending before the Court. In this footnote, the circuit court stated:

> That does not mean that Plaintiffs will necessarily be entitled to a rate recalculation, and we in no way suggest that they should have been paid in accordance with the previously approved state plan, which did not involve the use of any BAF for the 2008-09 fiscal year. When, as here, 'the record before the agency does not support the agency action,' the agency may be afforded an opportunity 'for additional investigation or explanation,' upon which the agency could lawfully base its action.

*Id.* at n.25 (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

In *Christ the King I*'s Conclusion, the Third Circuit held that it reversed our grant of summary judgment to the Federal Defendants and that it would "remand the case with instructions to enter a declaratory judgment in favor of Plaintiffs on their claim that HHS's approval of SPA 08-007 was arbitrary and capricious under the APA." 730 F.3d at 321. We also note the text of the Third Circuit's mandate.[4] It simply orders this Court to enter a declaratory judgment for Plaintiffs, "all in accordance with the opinion of this Court." (Doc. 32, Ex. 3).

Following the Third Circuit's decision,[5] the parties disputed before this Court the import of the Third Circuit's mandate in terms of whether it allowed for

---

[4] The Third Circuit refers to its mandate as a "certified judgment," but the parties refer to it as a mandate. For the purpose of consistency, we will refer to it as a mandate, as well.

[5] Plaintiffs initially filed a petition for a rehearing before the Third Circuit; however the petition concerned aspects of the panel's decision in *Christ the King I* that do not bear on the present issue of whether the Third Circuit's opinion permitted the agency to engage in further

the Secretary to conduct further administrative proceedings with regard to SPA 08-007. Counsel for both sides filed proposed orders and letters with their own arguments. The defendants requested that this Court enter a judgment expressly remanding for further administrative proceedings. *See Christ the King I*, Docs. 112, 113. Plaintiffs, on the other hand, argued that this Court lacked authority to remand based on its reading of the Third Circuit's mandate, and instead asked this Court to enter an order entering judgment in favor of plaintiffs on their request for declaratory relief  on their claim that HHS's approval of SPA 08-007 was arbitrary and capricious under the APA. *Id.*, Doc. 111.

In an earnest, albeit clearly unsuccessful attempt to avoid a further potential appellate issue, this Court declined to enter either side's proposed orders, and instead entered an Order on December 20, 2013 stating only that "[j]udgment is entered in favor of Plaintiffs on their claim that the Department of Health and Human Service's approval of SPA 08-007 was arbitrary and capricious." *Id.*, Doc. 114. However, our Order included the following footnote:

> Following the issuance of the Third Circuit's mandate, we tasked the parties to meet and confer and provide us with a joint proposed order to be issued post-mandate. Unfortunately the parties were unable to agree, and provided us with letter briefs reflecting their disparate views on the Third Circuit's mandate. Thus, we find the most prudent course to be to adopt the precise language articulated by the Third

---

investigation and review of SPA 08-007 with regard to compliance with Section 30(A). The panel denied their petition for a rehearing. (Doc. 32, Exs. 2,3).

Circuit in its mandate rather than attempt to parse the parties' varied positions and risk committing an error.

*Id.*

## C.    The Secretary's Review of Supplemented Administrative Record

On May 30, 2014, Defendant McCullough, on behalf of CMS, wrote to Beverly Mackereth at Pennsylvania's DHS, notifying her of the past litigation over SPA 08-007 and requesting that Pennsylvania submit "information or analysis providing evidence of the effect on quality of care of the rates set out in SPA 08-007 on the quality of care for residents in nonpublic nursing facilities." (Admin. Rec., p. 475).

Pennsylvania submitted its response on August 6, 2014. (AR, pp. 007-013). The response provided a detailed outline of how the administrative record would show that the SPA was consistent with quality of care and adequate access to care, in addition to the other requirements under Section 30(A).

The data submitted by Pennsylvania included CMS's own Quality Measure (QM) scores, showing that, from 2006 to 2010 (which includes the relevant 2008-2009 BAF time period), Pennsylvania "[saw] substantial improvement in 10 of the 12 QMs commonly reported for each year . . . ." (AR, pp. 011, 218-219). The data also showed that the number of substantiated complaints against nursing facilities in Pennsylvania had overall declined from 2008 to 2010: to wit, in 2008, there were 668 substantiated complaints; in 2009, there were 580; and in 2010, there

were 605 substantiated complaints. (AR, p. 220). Additionally, Pennsylvania cited

to American Health Care Association statistics demonstrating that the percentage

of nursing facilities in the state with "Substandard Quality of Care" and

"Immediate Jeopardy" citations was consistently well below the national average

and consistent with neighboring states. (AR, pp. 011, 216-17).

With regard to access to care, Pennsylvania provided data showing that there

had not been a decline in nursing facility participation, and in fact noted that in FY

2008-2009 the "vast majority" (more than 87 percent) of licensed nursing facilities

in the state were enrolled in the state Medicaid (or Medical Assistance) program.

The state also pointed to data showing that the Medical Assistance-certified

nursing facility beds at the enrolled providers accounted for over 95 percent of all

licensed nursing facility beds in the state. (AR, pp. 011-12, 225).

Plaintiffs do not challenge the accuracy of any of this data, or that it would

tend to show that the BAF for FYE June 30, 2009 had no adverse impact on quality

of care or access to care. Their main contention with regard to the merits of the

Secretary's reapproval of SPA 08-007 is that it was impermissible under the law to

use "post-hoc" data to decide whether to reapprove the SPA; in other words, they

argue that the SPA process is prospective and thus the Secretary's use of data

accumulated after the implementation of the BAF for that fiscal year to decide

whether the SPA met the requirements under Section 30(A) was an impermissible construction of the statute's requirements. (Doc. 30, pp. 29-30).

CMS informed Pennsylvania on September 26, 2014 that its submission "supports Pennsylvania's assertions that access to care and quality of care were not adversely affected" by SPA 08-007. (AR, p. 005). On December 12, 2014, CMS issued another letter to Pennsylvania further explaining its rationale for its conclusion in the September 26, 2014 letter that the SPA was consistent with Section 30(A). (AR, pp. 001-003). CMS explained how it had reviewed the data cited above to ascertain whether the new BAF contained in SPA 08-007 was consistent with the quality of care and access to care requirements. Among other findings, it noted that CMS's "own Quality Measure scores reveal that from 2006 to 2010, Pennsylvania has seen substantial improvement in ten out of twelve [quality measures] commonly reported each year." CMS concluded that these quality indicators for the state's skilled nursing facilities "remain consistent with national averages and with periods prior to the rate year in SPA 08-007 and subsequent to the rate year in SPA 08-007." (AR, p. 002).

Based on these findings, the Secretary approved SPA 08-007, effective July 1, 2008. (AR, p. 003).

## III.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

"Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Virginia, Dept. of Medical Assistance Services v. Johnson*, 609 F.Supp.2d 1, 6 (D.D.C. 2009) (internal citations).  This type of case may be resolved on cross-motions for summary judgment. *Id.*

## IV.   DISCUSSION

Section 706 of the APA provides the standard for the Court's review of the agency action. *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011). It requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." This is a restricted standard of review. *Christ the King I*, 730 F.3d at 305. Under this standard of review, the Court must determine whether the agency, here, HHS, "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action," but the Court must "not . . . substitute [our own] judgment for that of the agency." *Id.* (internal citations omitted). Courts find an agency action to be arbitrary and capricious where:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

In their motion, Plaintiffs advance two main arguments challenging the Secretary's reapproval of SPA 08-007. First, they argue that the Secretary's reopening and approval proceedings were barred because neither the Third Circuit's decision in *Christ the King I* nor this Court's final judgment authorized a

remand for further agency proceedings with regard to the SPA. Second, as alluded to earlier in our Memorandum, Plaintiffs argue that the Secretary's reapproval of the SPA was based on an impermissible construction of the statute's requirements, in that HHS relied on "post-hoc" data to support its determination that the SPA met the requirements of Section 30(A).

Defendants argue that Plaintiffs are incorrect in their reading of *Christ the King I*, and that the Third Circuit expressly discussed and authorized further agency proceedings. Their position is that the Third Circuit's opinion not only left open the possibility of further agency proceedings but in fact required this Court to enter a judgment providing for a remand for further agency proceedings. Defendants also assert that general principles of administrative law required a remand. With regard to the Plaintiffs' challenge of the Secretary's reapproval decision on the merits based on her use of "post-hoc" data, Defendants first posit that this argument is waived because Plaintiffs' Amended Complaint does not challenge the reapproval on the merits. If the Court does not find Plaintiffs' merits argument to be waived, Defendants argue that the Secretary reasonably interpreted Title XIX to not foreclose her consideration of all information, including "post-hoc" data, submitted by Pennsylvania in support of SPA 08-007.

A.   **Whether the Secretary's Reapproval Proceedings were Inconsistent with the Third Circuit's Decision in *Christ the King I* or this Court's Final Judgment**

Upon a comprehensive review of the Third Circuit's opinion and mandate in *Christ the King I*, we find that the panel did not foreclose and in fact expected and authorized further agency proceedings with regard to SPA 08-007, even if the text of the mandate did not explicitly reference a remand for this purpose.

We begin with the text of the Third Circuit's mandate. It simply orders this Court to enter a declaratory judgment for Plaintiffs, "all in accordance with the opinion of this Court." (Doc. 32, Ex. 3). Indeed, the mandate does not expressly address further agency proceedings. However, the mandate's final clause, "all in accordance with the opinion of this Court," cannot be read as superfluous. The mandate, as our final Order reflects, effectively incorporated by reference the panel's opinion in *Christ the King I*. After all, it stands to reason that the panel would not have written such a detailed and comprehensive opinion had it not intended or expected the parties to take its entirety under advisement when moving forward with this SPA as well as others in the future. *See Kilbarr Corp. v. Bus. Sys. Inc., B.V.*, 990 F.2d 83, 87-88 (3d Cir. 1993) ("A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.")

The opinion in *Christ the King I* clearly anticipates further agency proceedings; at the very least, it does not foreclose them. Concluding its discussion of Section 30(A) and its holding that the Secretary's approval of the SPA was arbitrary and capricious, the panel explicitly stated that they did not seek to imply that the payments Pennsylvania made to providers under the SPA for the 2008-09 fiscal year were in fact insufficient to maintain quality of care or adequate access to providers. *Christ the King I*, 730 F.3d at 314. In other words, with its opinion, the panel did not pass judgment on the merits of the BAF and whether or not it could meet the requirements of Section 30(A). The panel only held that based on the record before HHS, HHS was not able to discern whether the payment rates under SPA 08-007 were consistent with quality of care and adequate access; thus, the panel was obligated to set aside the Secretary's approval. *Id.*

Immediately following its holding that it was obligated to set aside the approval, the panel underscored the limitations of its holding in a footnote which we excerpted above, stating that the holding "[did] not mean that Plaintiffs will necessarily be entitled to a rate recalculation, and we *in no way* suggest that they should have been paid in accordance with the previously approved state plan . . ." *Id.* at n.25 (emphasis added). This is quite forceful language, logically included as a signal to the parties that the analysis of SPA 08-007 had not concluded. The Third Circuit, in our view, clearly telegraphed to Pennsylvania and the Plaintiffs

16

that the battle over this payment rate was not over, and moreover, that the panel

was not seeking to bless or condemn the payment rate. Indeed, the panel further

reasoned that:

> When, *as here*, "the record before the agency does not support the
> agency action," the agency may be afforded an opportunity "for
> additional investigation or explanation," upon which the agency could
> lawfully base its action.

*Id.* (emphasis added) (quoting *Fla. Power & Light Co.*, 470 U.S. at 744). With this

statement, the panel explicitly licenses further agency proceedings. Indeed, if the

panel did not intend for there to be a remand for further agency proceedings, this

footnote would be but a gratuitous tease to HHS. Appropriately deferential to

agency actions in this context, the panel clearly intended HHS to have a second

bite at the apple in reviewing SPA 08-007, but ordered that it be accomplished with

all appropriate considerations under Section 30(A) in mind.

Moreover, in their appeal plaintiffs in *Christ the King I* expressly sought to

have the Third Circuit preclude remand, but the panel's opinion appears to have

considered this request and rejected it. Plaintiffs argued in their appellant brief that

"the Secretary's approval cannot be cured on remand," and that the court should

"preclude all Defendants from any further application of SPA 07-007 [sic] to

determine Plaintiffs payment rates" and "declare that the only approved State Plan

applicable to the [2008-09] fiscal period is the one in place prior to July 1, 2008,

which did not provide for the application of a BAF after June 30, 2008." (*Christ*

*the King I*, Appellants' Br. at 39, 65). In response to this argument against remand, the defendants argued that ". . . if the Secretary's determinations were in some respect inadequate, the proper remedy under the APA would be to remand this case to CMS for further proceedings." (*Id.*, Br. for Federal Defendants-Appellees at 33 n.14) (citing *Fla. Power & Light*, 470 U.S. at 744).

With footnote 25 in *Christ the King I*, then, the panel appears to have addressed this argument regarding the appropriateness of remand, and found in favor of the Defendants, even going so far as to cite to exactly the same case as Defendants for the proposition—*Fla. Power & Light*, 470 U.S. at 744.

The panel elsewhere in its opinion confirmed it intended its mandate to include a remand for further agency review. In explaining why the case was not moot, considering the litigation concerned a reimbursement rate period from years earlier, the panel noted: "This appeal provides an opportunity for them to obtain some measure of relief, since, if the agency's action was arbitrary or capricious under the APA, we must set that action aside and require the agency to conform its action to federal law." *Christ the King I*, 730 F.3d at 304 n.18.  To support this statement, the panel then quoted from *Fla. Power & Light*, 470 U.S. at 744: "[i]f the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." *Id.* Had this case presented "rare circumstances," we safely assume the panel would have said as much.

While admittedly an explicit order of remand in the panel's mandate would have been preferable for the parties and this Court, there is only one reasonable interpretation of the panel's opinion: that it intended its opinion to authorize further agency review of the SPA. For us to find that the panel did not authorize a remand would be at best excessively formalist and at worst expose us to committing a reversible error.

This Court's final Order did not foreclose further agency proceedings, either. Given that we asked the parties to provide us with a joint proposed order to be issued post-mandate, and that the parties continued to dispute what the language of that proposed order should be and failed to come to an agreement, we decided to "adopt the precise language articulated by the Third Circuit in its mandate rather than attempt to parse the parties' varied positions and risk committing an error." *Christ the King I*, Doc. 114. And as aforestated, the Third Circuit's mandate expressly stated that it was remanding the case to us "for entry of declaratory judgment for Plaintiffs, *all in accordance with the opinion of this Court*." (Doc. 32, Ex. 3) (emphasis added). To put it perhaps inartfully but accurately, our final order incorporated by reference the Third Circuit's mandate, which itself incorporated its

opinion in *Christ the King I*. In other words, as Defendants argue, this Court's final

Order is best understood as an implicit remand.[6][7]

We candidly admit that our final Order entering judgment in favor of

Plaintiffs intentionally avoided further clarifying the remand issue, thus bringing us

to this point. We had hoped, perhaps applying false judicial optimism, that the

parties would come to an agreement on a path forward, given the important public

interest at stake in the provision of quality health care services. Nonetheless, we

today find that the clear import of the Third Circuit's decision, even if its mandate

was not explicit on this issue, was to allow the Secretary to engage in additional

---

[6] Given that we have clarified that both the Third Circuit's mandate and our final Order allowed
for further agency review proceedings of the SPA, Plaintiffs' discussion of estoppel and
preclusion in their brief opposing the Defendants' motion is now irrelevant, as the argument
turns on an assumption that there was no remand and thus Defendants' reapproval proceedings
were "barred." Relatedly, we find Plaintiffs' argument based on *New York v. Shalala*,119 F.3d
175 (2d Cir. 1997), to be difficult to follow, but to the extent Plaintiffs cite *New York* for their
position that preclusion and estoppel are relevant to our disposition in the matter *sub judice*,
(Doc. 34, p. 17), we find the discussion of that case similarly irrelevant.

[7] Additionally, since we have interpreted both the appellate decision and our final Order to allow
for a remand, we need not wade too deeply into Plaintiffs' argument that 42 U.S.C. § 1316(a)(4)
does not provide Defendant with authority to reopen administrative proceedings. (Doc. 30, p.
27). Plaintiffs' argument appears to hinge on the false assumption that *Christ the King I* did not
authorize further agency proceedings.

   To the extent that Plaintiffs' unclear argument stands for the proposition that Defendants
have no authority to revive proceedings unless § 1316(a)(4) authorizes it, Plaintiffs have already
conceded that courts have inherent authority to order a remand in APA cases. (Doc. 30, pp. 23,
28) (citing *United States v. Jones*, 336 U.S. 641, 672 (1949)). Further, § 1316(a) is simply not
directly applicable to the instant matter, in that by its terms it applies only to the situation where
a state is dissatisfied with the Secretary's final determination regarding a state plan and seeks
court review; this statute authorizes direct appellate review of such a determination. Plaintiffs
cite to no authority for the broad proposition that agencies cannot conduct further investigations
pursuant to a court remand unless done so pursuant to § 1316(a). Lastly, the panel itself in *Christ
the King I* cited to § 1316 as support for its decision to allow a remand for the Secretary the
opportunity for "additional investigation or explanation." 730 F.3d at 314 n.25 (internal citation
omitted).

investigation and review of SPA 08-007, consistent with its guidance on what was required under Section 30(A). This holding is also in line with fundamental principles of administrative law. *See Fla. Power & Light*, 470 U.S. at 743-44 ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors . . . the proper course, except in rare circumstances, it to remand to the agency for additional investigation or explanation.")

   We note that both parties extensively argue that *New York v. Shalala* supports its own position in the instant matter. However, we do not find the case particularly persuasive one way or the other in aid of our disposition. In *New York*, the Second Circuit considered whether its earlier decision in *Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306 (2d Cir. 1991), in which the court declared a state plan amendment which the Secretary had approved to be "null and void," permitted the state to seek reapproval of the amendment. The court held in *New York* that the *Pinnacle* opinion and decision did allow the state to attempt to gain reapproval of the state plan amendment by submitting supplemental findings and assurances. *New York*, 119 F.3d at 180.

   Counter to what Defendants argue, the Second Circuit's prior judgment in *Pinnacle* much more explicitly ordered further agency review. We also do not find, as Plaintiffs urge, (Doc. 17, ¶ 52), that the Secretary in the instant matter is bound

by her previous position in *New York* that she could not engage in reapproval

proceedings once a court found a state plan amendment to be "null and void." It is

clear that the Secretary's position was based on the specific language of the

opinion and mandate in *Pinnacle*, rather than a broader pronouncement of an HHS

position on reapproval proceedings for state plan amendments.

*New York* is persuasive only to the extent that in deciding whether the panel

in *Pinnacle* authorized the state to submit supplemental findings and seek

reapproval by the Secretary, it looked not only to the panel's mandate but instead

engaged in "an examination of the entire opinion and its resolution of the

substantive claims . . .," ultimately finding that the panel "le[ft] the door open for

New York to revive [the state plan amendment]." *Id.* at 180. Our approach in

resolving the remand issue in the instant matter by reviewing the Third Circuit's

entire opinion in *Christ the King I*, then, is in line with the Second Circuit's

approach in *New York*.

### B.    Whether the Reapproval of SPA 08-007 was Consistent with Section 30(A)

Plaintiffs argue that even if the Court finds that the prior proceedings

allowed for further agency review and reapproval of SPA 08-007, the Secretary in

her reapproval proceedings impermissibly considered "post-hoc" data—that is,

data on the actual effects of SPA 08-007, as opposed to predictive data normally

considered by the Secretary on the likely effects of a state plan amendment.

Plaintiffs contend that the Secretary's reapproval of the SPA, based on this data, was based on an impermissible construction of 42 U.S.C. § 1396a(30)(A). Defendants respond that the Secretary reasonably interpreted Title XIX not to foreclose her consideration of all information submitted by Pennsylvania in support of SPA 08-007, including the so-called post-hoc data.[8]   Plaintiffs do not dispute that the conclusion to be drawn from the data in question is that SPA 08-007 had no observable adverse impact on quality of care or access to care.

As aforestated, Section 30(A) requires that a state plan provide:

> methods and procedures . . . to assure that payments are consistent
> with efficiency, economy, and quality of care and are sufficient to
> enlist enough providers so that care and services are available under
> the plan at least to the extent that such care and services are available
> to the general population in the geographic area . . .

Our review of the Secretary's interpretation of Section 30(A) is governed by the two-step framework in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).[9] At step one, the court determines "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If

---

[8] Defendants also argue that Plaintiffs waived this argument with regard to post-hoc data because their Amended Complaint does not challenge the Secretary's reapproval decision on the merits. However, we do not find Plaintiffs to have waived their argument. In this type of APA case where there are no facts in dispute and the case is determined on cross motions for summary judgment, there is no prejudice to the Defendants by Plaintiffs' failure to raise an argument in their pleadings. *See Cedars-Sinai Medical Center v. Shalala*, 177 F.3d 1126, 1129 (9th Cir. 1999); *see also Novosteel SA v. U.S. Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[A] party does not waive an argument based on what appears in its pleading; a party waives arguments based on what appears in its brief.")

[9] The Third Circuit held in *Christ the King I* that the *Chevron* framework does apply to SPA approvals by HHS. 730 F.3d at 307.

Congressional intent is clear, our analysis ends here, as courts as well as the agency in question "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. If the court makes a determination that Congress has not "directly addressed the precise question," in that the statute is "silent or ambiguous with respect to the specific issue," then the court proceeds to step two of the framework, in which it must decide "whether the agency's answer is based on a permissible construction of the statute." *Id.* The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to agency interpretations." *Id.* at 844.

From this Court's perspective, we do not believe there could be any colorable argument that "Congress has directly spoken to the precise question at issue." As Defendants correctly note, Section 30(A) is a broadly written statute. The Supreme Court in *Armstrong v. Exceptional Child Ctr., Inc.*, has recently underscored just how unspecific Section 30(A) is in terms of what is required of a state plan and how the agency must discern whether a state plan has met those requirements. 135 S. Ct. 1378, 1385 (2015). In its opinion, the Supreme Court noted, "[i]t is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments that are 'consistent with efficiency, economy, and quality of care . . ." *Id.* In fact, the Supreme Court goes

so far as to call Section 30(A)'s text "*judicially unadministrable*." *Id.* (emphasis added).[10] This precedent alone strongly cautions this Court against finding impermissible the Secretary's interpretation of Section 30(A) to allow for consideration of post-hoc data in deciding whether to reapprove the SPA.

Thus, the post-hoc data question is resolved at step two of the *Chevron* analysis: whether the Secretary's interpretation of Section 30(A) to allow for the consideration of post-hoc data, or as the Secretary calls it, "the most accurate and current" data, is a "permissible" construction of the statute. We underscore that we have a very limited role: the reviewing court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844. Fully cognizant of our limited standard of review, we thus hold that the Secretary's determination to use the most current data available to her upon remand to examine whether SPA 08-007 did in fact comply with Section 30(A)'s requirements was a permissible and reasonable interpretation of this statute. In doing so we decline to adopt the unreasonable and artificial construct that comprises Plaintiffs' view of how the Secretary should conduct this review.

---

[10] Justice Breyer agreed in his concurrence: "Congress decided to vest broad discretion in the agency to interpret and to enforce § 30(A)." *Id.* at 1390 (Breyer, J., concurring). Moreover, the Supreme Court's dicta regarding how perilous it is for judges to administer this statute finds no better exemplar than the case *sub judice*.

The Third Circuit has considered Section 30(A)'s requirements in two previous cases, which notably predate *Armstrong*. In *Rite Aid of Pa., Inc. v. Houstoun*, the circuit court held that the statute requires only "substantive compliance" with the four specified factors (efficiency, economy, quality of care, and adequate access), but it "does not impose any particular method or process for getting *to* that result." 171 F.3d 842, 851 (3d Cir. 1999) (emphasis in original). In *Pa. Pharmacists Ass'n v. Houstoun*, the circuit court interpreted Section 30(A) again, and held that the statute does not grant Medicaid providers a cause of action under 42 U.S.C. § 1983. 283 F.3d 531,534-35 (3d Cir. 2002).

Plaintiffs argue that language from the *Rite Aid* opinion binds our decision here. Specifically, they argue that the Third Circuit in that decision "rejected the Seventh Circuit's acceptance of post-hoc data" in addressing what is required under Section 30(A). (Doc. 37, p. 13). Plaintiffs cite to *Rite Aid*'s statement that "a state may not act arbitrarily and capriciously" in setting payment rates "by offering a certain price, and seeing what response or result that price brings forth . . ." *Id.* at 851. However, the panel then clarified, "section 30(A) *does not* govern the process by which [a state] sets its prices . . . other doctrines do . . . ." *Id.* at 852 (emphasis added). Thus, a full reading of *Rite Aid* does not support reading a prohibition on post-hoc data into Section 30(A) in terms of what the Secretary is permitted to review during the approval process.

Furthermore, the main thrust of the Third Circuit's opinion was its emphasis that Section 30(A) requires the state to "achieve a certain result." The Third Circuit repeated itself on this point at least three times in just one section of its opinion. *Id.* at 851-852. If anything then, *Rite Aid* provides support for Defendants' position that it can consider data pertaining to the actual consequences of the SPA after remand. There is no dispute in the instant matter that the state has achieved the required results under Section 30(A). If anything, limiting the type of data the state or the Secretary is permitted to consider in the approval process could be viewed as reading a "procedural" requirement into Section 30(A), which *Rite Aid* held to be an incorrect interpretation of the statute.

In any event, the Third Circuit itself has stated that its interpretations of Section 30(A) do not control, and that under the *Chevron* standard, "if HHS applied a different but nonetheless permissible interpretation of Section 30(A), then we must defer to that interpretation, even if it conflicts with our precedent." *Christ the King I*, 730 F.3d at 308. Again, the operative question is whether HHS's reapproval of SPA 08-007 is based on a permissible construction of Section 30(A).

"To answer that question, we must consider the basis HHS had for concluding that Section 30(A) is satisfied, which requires we examine the record it had before it" during the SPA reapproval process. *Id.* at 309. Here, the basis for HHS's reapproval was the supplemental data from Pennsylvania. As aforestated,

the data submitted by Pennsylvania includes CMS's own Quality Measure (QM)

scores, showing that, from 2006 to 2010 (which includes the relevant 2008-2009

BAF time period), Pennsylvania "[saw] substantial improvement in 10 of the 12

QMs commonly reported for each year . . . ." (AR, pp. 011, 218-219). Also,

Pennsylvania cited to American Health Care Association statistics demonstrating

that the percentage of nursing facilities in the state with "Substandard Quality of

Care" and "Immediate Jeopardy" citations was consistently well below the national

average and consistent with neighboring states. (AR, pp. 011, 216-17).[11]

Pennsylvania also submitted additional data with regard to access to care.

Again, Plaintiffs do not dispute the conclusions drawn by HHS from this

supplemented data that the SPA did not cause an adverse impact on quality of care

or access to care. They argue that the consideration of this data was impermissible.

However, we find the Secretary's decision to consider the most relevant, current

information available to her in deciding whether the SPA complied with Section

309(A) to have been a reasonable decision. Pennsylvania no longer presents to

HHS an "unsupported assertion that its plan meets Section 30(A)'s requirements,

without any accompanying explanation or evidence." *Christ the King I*, 730 F.3d at

312. It now has the most relevant data possible to buttress its assertion—data on

the actual effects of the SPA on quality of care and access to care. "[I]n order for

[11] To review our full summary of the supplemented record, please refer to pages 9-10 of our
Memorandum.

HHS to deny approval on Section 30(A) grounds, a plan must fail to fulfill its conditions." *Christ the King*, 730 F.3d at 313. We simply cannot conclude that HHS was unreasonable in finding the SPA to meet Section 30(A)'s conditions, based on the supplemented record.

Plaintiffs additionally argue that the Secretary's review of post-hoc data was impermissible because Congress and the Secretary herself have established time limits for the approval of state plan amendments, and that the approval process was not intended to "string out" over a period of six years. While that argument is facially compelling, in practical fact the only reason the Secretary had the opportunity to review the post-hoc data was because of the multiple rounds of litigation over SPA 08-007, *after* the Secretary's initial approval which occurred in 2008. The statutes and regulations cited by Plaintiffs in support of their time limits argument, 42 U.S.C. § 1316 and 42 C.F.R. § 447.256(b), simply do not apply to a case with the procedural posture such as the one we have: review of a reapproval of an SPA following court decisions permitting such a review by the Secretary. *Christ the King I* permitted the Secretary an additional opportunity to reconsider the SPA; presumably, if the Secretary were not permitted by statute to engage in further review after a court order, then *Christ the King I* would not have allowed an additional review period.

We further note that it appears to be established agency practice for the Secretary to review additional information submitted by a state regarding a plan amendment multiple years after the amendment's submission to the agency. *See Douglas*, 132 S.Ct. at 1208-09 (CMS approved in 2011 the state's plan amendments submitted in 2008). Plaintiffs do not address this contention made by Defendants. We acknowledge that it is unclear whether it is established agency practice to consider post-hoc data; however, we can easily speculate that it is unlikely the agency has often found itself in the posture it finds itself in the instant matter.

In the specific context of the matter *sub judice*, our conclusion that the Secretary's review of post-hoc data to determine whether the SPA complied with Section 30(A) was a permissible construction of the statute is eminently logical and reasonable. Consider, as Defendants argue, an alternative situation where this Court ordered the agency to engage in further review of the SPA, and the agency received data from Pennsylvania showing that implementation of the SPA had in fact resulted in adverse consequences on quality of care and access to care. In that scenario, we highly doubt Plaintiffs would be before the Court suggesting that the Secretary should callously ignore such data. In effect, Plaintiffs ask the Court to rule that the Secretary on remand should have reviewed only the data that would have been available to her during the initial review proceedings, and ignore the

more recent data bearing on the actual effects of the SPA, even though she had this data at her fingertips. This is a practical absurdity, and as aforestated an illogical construct. To find the Secretary's consideration of more recent data impermissible would be a foray into judicial abstraction. Especially considering the Supreme Court's pointed commentary that Section 30(A) is "judicially unadministrable," we can easily choose not to err on the side of judicial abstraction.

Plaintiffs argue that, as a policy matter, this decision renders the state plan amendment initial review process a charade. We disagree. HHS has no discernible incentive to engage in years upon years of litigation over its approval or disapproval of an SPA for a specific fiscal year. It likewise has no motivation to rubber stamp an amendment, and wait for supplemental data following a court remand to decide an amendment in fact complied with the statute. Additionally, HHS must still comply with the other regulations involved with the SPA review process.

Accordingly, because we find permissible the Secretary's construction of Section 30(A) to not preclude the use of post-hoc data, or data bearing on the actual results of SPA 08-007, in deciding whether the statutory requirements were met, we find the Secretary's reapproval based on this data to not be arbitrary or capricious. As aforestated, the undisputed conclusion to be drawn from this additional data was that SPA 08-007 was consistent with quality of care and access

to care. In line with the Third Circuit's guidance, HHS has now "actually determine[d] which scenario it confronted" insofar as it has determined, based on the supplemented data, that the payments to providers under SPA 08-007 were consistent with Section 30(A)'s requirements. *See Christ the King I*, 730 F.3d at 314.

## V.   CONCLUSION

Sadly, we are confident that our decision will not end this morass of a case. It has compelled us to decipher a statute that the Supreme Court has editorialized as problematical, suffer a reversal by the Third Circuit, interpret a less than clear circuit mandate, and finally negotiate this case several times through admittedly uncharted waters. We have done our best, and confess relief that for now at least, we may pass this cup to other jurists. We hope fervently never to see it again.

For the reasons hereinabove set forth, the Court shall grant the Defendants' motion for summary judgment and deny the Plaintiffs' motion for summary judgment. Judgment shall be entered in favor of Defendants.

An appropriate Order shall follow.